IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

NACY PHILLIPS                                                                                          PLAINTIFF

V.                                          3:19CV00319 JM

CRISP CONTRACTORS                                                                         DEFENDANT

## ORDER

Plaintiff Nacy Phillips, a former employee of Crisp Contractors, filed her *pro se* complaint on November 8, 2019 alleging that, in the course of her employment, she experienced workplace discrimination because of her sex in violation of Title VII, 42 U.S.C. § 2000 *et seq*. (Doc. 1). Crisp moved for summary judgment. (Doc. 26). Phillips responded (Doc. 30), and Crisp has replied. (Doc. 31) The motion is now ripe for review.

**I.    Facts**

Although Phillips states that there are disputed material facts (Doc. 30 at 2), she does not specifically contest any of Crisp's Statement of Material Facts (Doc. 28). LOCAL RULE 56.1(c). In any event, the facts are straightforward.

Phillips has worked for Crisp as a truck driver on two occasions; however, only the second is relevant to this lawsuit. In February 2019, Crisp rehired Phillips, who has a commercial driver's license, as a truck driver. (Doc. 26-1 at 47, Doc. 28). Charles Jackson was Phillips's supervisor throughout the relevant time period. (*Id.*). Phillips reported that she liked Jackson and that he was always respectful to her. (*Id*. at 52, *Id*.). Both Phillips and Jackson understood that he was her immediate supervisor and any complaints Phillips had, were to be brought to Jackson's attention. (*Id*. at 69, Doc. 26-2, at 9).

Alfred Robinson was a bulldozer operator for Crisp. (Doc. 26-3 at 1). On July 5, 2019, Phillips received a call from Patti Vanderpool, another female driver with Crisp. In the call,

Vanderpool relayed that Robinson had been telling other employees that he had paid Phillips to have sex with him. (Doc. 26-1 at 76).

Shortly after Vanderpool's call, Phillips called Jackson explaining that she needed to speak with Robinson and wanted Jackson to join her in that conversation. (Doc. 26-1 at 76-79, Doc. 26-2 at 15-19). Jackson agreed and together they met at Robinson's worksite. (*Id.*). When Robinson exited his bulldozer, he took a sip of whiskey from the bottle as he walked toward them. (*Id.*). Without providing any specifics, Phillips asked Robinson to stop saying untrue things about her. (*Id.*). In response, Robinson threw the whiskey bottle at Phillips. Phillips moved, and the bottle hit the bed of Jackson's truck. (*Id.*). Robinson got back in his bulldozer without saying anything else and left. (*Id.*).

Jackson instructed Phillips to go back to the shop. He then immediately called Denver Crisp, Robinson's supervisor, to report the incident. (*Id.*, Doc. 26-3 at 1). On hearing the story, Denver sent Robinson home and suspended him without pay. (*Id.*). Thereafter, Jackson joined Phillips back at the shop, told her Robinson had been sent home, and gave Phillips the option either to stay at work or take the rest of the day off. Phillips stayed at work. (*Id.*). Robinson left Phillips a voice mail later that day apologizing for his behavior. (Doc. 26-1 at 85-86).

After Robinson's suspension, he and Phillips continued to work together. Phillips stated that Robinson talked to her "as if nothing had happened" and asked if she was alright on his return. (Doc. 26-1 at 85). Although Phillips does not remember telling Jackson she was uncomfortable working with Robinson (Doc. 26-1 at 85), Jackson recalled Phillips telling him she no longer felt safe when Robinson was around. (Doc. 26-2 at 21). Jackson remedied the situation by attempting to keep Robinson's and Phillips's schedules from overlapping. (*Id.* at 21). Phillips confirmed that there was never another incident where she felt abused or treated differently at work. (Doc. 26-1 at 99-100). And, at the time she filed the present action, she was

2

still employed with Crisp and, again, stated nothing else had happened. (Doc. 26-1 at 112). Jackson also confirmed that he never heard of another issue. (Doc. 26-2 at 22-23). Although Phillips stated the incident generally made her uncomfortable, she admitted that no conditions of her employment – her job title, responsibilities, pay, opportunity for overtime – changed as a result of the incident. (Doc. 26-1 at 101).

Jackson recalled hearing Robinson make a similar remark about Phillips in the weeks before the incident. (Doc. 26-2 at 14, 23-24). Jackson, who was not Robinson's supervisor, told Robinson not to talk like that and, believing the situation had been handled, did not report Robinson to Denver Crisp. (*Id.*). Outside of the comments by Robinson, Jackson reported never observing any other sexually offensive behavior or language in his employment with Crisp. (Doc. 26-2 at 10). At some point, Jackson did learn that some of the men would not always promptly help the female drivers when something went wrong. He again explained that as soon as he learned of that possibility, he addressed and resolved the problem. (Doc. 26-2 at 11-13). Jackson never reported the issue to anyone else at Crisp and, thereafter, never heard any more complaints from any of the female drivers. (Doc. 26-2 at 12-13).

Phillips filed a charge with the EEOC on October 1, 2019, alleging she was subjected to sex discrimination. (Doc. 5 at 3). Phillips cited the incident with Robinson and further argued that she was suspended on July 27, 2019 – not because she got her truck stuck in the sand but because she was female. (*Id.*). The EEOC denied her claims and issued her a right-to-sue letter on October 4, 2019. (Doc. 5 at 1)

In her federal complaint, Phillips argued that she suffered sex discrimination as a result of the Robinson incident and argued that, as a result, she was not promoted. In her response to summary judgment, Phillips expands her arguments, citing the July 27th suspension as evidence both of retaliation and discrimination.

3

## II.  Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874, 878 (8th Cir. 1987), FED. R. CIV. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, i.e., '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) (brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

**III.     Analysis**

As an initial matter, Crisp is entitled to summary judgment on Phillips's retaliation and failure to promote claims. Phillips did not make either claim in her EEOC charge. (Doc. 5 at 3). Title VII requires exhaustion which was not met. *Cottrill v. MFA, Inc.*, 443 F.3d 629, 634 (8th Cir. 2006). Besides, Phillips admitted in her deposition that she had not intended to tick the "failure to promote" box in her federal claim. (Doc. 26-1 at 113). And, although Phillips raised her July 27th suspension in the EEOC complaint, she did not allege it constituted retaliation nor did she raise in her federal complaint. Even if she had, the suspension was months before she either filed an EEOC charge or a federal complaint; therefore, it could not support a retaliation claim. Therefore, the sole question for this Court's review is whether the July 5th incident constitutes workplace discrimination and evidence of a hostile work environment under Title VII.

"To survive a motion for summary judgment on a [sex] discrimination claim, a plaintiff must either present admissible evidence directly indicating unlawful discrimination, or create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Macklin v. FMC Transport, Inc.*, 815 F.3d 425, 427 (8th Cir. 2016) (internal citations omitted). Phillips has presented no evidence of "conduct or statements by persons involved in the decision-making process" to support an allegation of direct discrimination. *Thomas v. Heartland Empl. Services LLC*, 797 F.3d 527, 530 (8th Cir. 2015). Accordingly, the Court will analyze Phillip's sex discrimination claim under the burden-shifting framework of *McDonnell Douglas*.

To establish a prima facie case of gender discrimination, a plaintiff must show that: (1) she was a member of a protected group; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) the facts give rise to an inference of unlawful gender

discrimination. *E.g.*, *Fiero v. CSG Sys., Inc.*, 759 F.3d 874, 878 (8th Cir. 2014). Similarly, to establish a prima facie case of sex discrimination based on a hostile work environment, Plaintiff must show that: (1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment affected a term, condition or privilege of her employment. *E.g.*, *Gibson v. Concrete Equipment Co., Inc.*, 960 F.3d 1057,1063 (8th Cir. 2020). Phillips has not met either of these burdens.

Crisp does not contest that the incident with Robinson occurred. However, as soon as it learned of the conduct, the situation was addressed by Robinson's suspension without pay. Phillips acknowledged that no further incidents or harassment occurred. It is clear, therefore, that the harassment was neither severe nor pervasive. *See McCurdy v. Arkansas State Police*, 375 F.3d 762, 768 n6 (8th Cir.2004), *cert. denied*, 543 U.S. 1121 (2005) (finding that employer took proper remedial action where it "immediately . . . insulate[d] [the alleged victim] from further offensive conduct"). And, importantly, it is uncontested that Phillips suffered no resulting adverse employment action. Her job responsibilities, pay, and opportunity for overtime all remained unchanged. As a result, Phillips has no hostile work environment or discrimination claim.

**IV.   Conclusion**

Crisp's motion for summary judgment (Doc. 26) is granted. The case is dismissed with prejudice. The trial will be cancelled.

IT IS SO ORDERED this 14th day of January, 2021.

_____
UNITED STATES DISTRICT JUDGE